UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| BACON CONSTRUCTION CO., INC. AND AGOSTINI CONSTRUCTION CO., INC., <br> Plaintiffs, <br> v. <br> OHIO SECURITY INSURANCE CO. AND THE OHIO CASUALTY INS. CO., BOTH D/B/A LIBERTY MUTUAL INSURANCE CO.; COLONY DRYWALL, INC.; DANIAL ALFAIATE; MARLENE ALFAIATE, <br> Defendants. | No. 1:20-cv-280-MSM-LDA |

MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

This is one of those cases in which the dispute involves not the facts, nor the law, but the application of law to the facts. Because the material facts, as described below, are not in dispute,[1] partial summary judgment under Fed. R. Civ. P. 56 is appropriate. *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st

---

[1] The insurers acknowledge they do not dispute "much of" the plaintiffs' factual assertions. (ECF No. 40 at 6.) Those facts that they *do* dispute (certain non-pertinent portions of policies, and the way the plaintiffs have characterized certain writings) do not defeat the appropriateness of partial summary judgment and the Court has not found it necessary to resolve any of those quarrels.

1

Cir. 2000). The relevant parties, by filing cross-Motions for Partial Summary Judgment, agree.[2]

## I.   BACKGROUND

Bacon Construction Co., a Rhode Island corporation, partnered[3] with Agostini Construction Co., a Massachusetts corporation, to renovate a high school in Plymouth, Massachusetts. They had worked together before, were combining efforts for bonding purposes, and this new endeavor was not described in any paperwork; instead, it was simply designated by them a "joint venture" called Bacon Agostini Joint Venture ("BAJV"). During the project, they subcontracted with Colony Drywall ("Colony") to perform certain work. Plaintiff Daniel Alfaiate, married to plaintiff Marlene Alfaiate, worked for Colony. The Alfaiates live in Massachusetts. To round out the players, Ohio Security Ins. Co. ("Ohio Security") and Ohio Casualty Ins. Co. ("Ohio Casualty"), together d/b/a Liberty Mutual Ins. Co. (the three entities collectively, "the insurers") provided, respectively, general liability and umbrella coverage to Colony Drywall. (ECF Nos. 38-7 and 38-8.) Coverage under those policies ("policies") is at the heart of this lawsuit.

---

[2] These motions concern only the two plaintiffs and the insurance companies.
[3] This word is used colloquially, not to describe a legal partnership which is a specific relationship denoting obligations and benefits between entities. In the instant context, it denotes an agreement to work together to achieve a common purpose.

As a condition of the subcontract, Colony was required to add the joint venture BAJV[4] as an additional insured on its general liability policy. (ECF No. 38-4 at 12.)[5] It did so and received a Certificate of Liability Insurance issued by the insurers. (ECF No. 38-10.) The Certificate named "Agostini Bacon Joint Venture." *Id.*

While working on the high school roof, Daniel Alfaiate slipped and fell, suffering an injury that caused him and his wife to sue, in Massachusetts, Bacon Construction Co. and Agostini Construction Co. individually.[6] When BAJV invoked the policy (ECF No. 38-10), both indemnification coverage and duty to defend were denied by the insurers. (ECF No. 38-11.)

The construction companies seek declaratory relief that would obligate the insurers to defend the Alfaiate lawsuit and to indemnify them if they are found liable to Mr. and/or Ms. Alfaiate in Massachusetts.[7]

## II.   JURISDICTION & CONFLICT OF LAWS

These plaintiffs and defendants reside in different states, giving rise to diversity jurisdiction. 28 U.S.C. § 1332. There is a conflict of laws question presented, as to whether Massachusetts or Rhode Island substantive law should govern. The plaintiffs contend that Massachusetts law should apply because the policies were

---

[4] The additional insured was spelled out in the subcontract agreement as "Bacon Agostini Joint Venture," a fact that turns out to be important to this Motion.
[5] When reference is made to a page within ECF, it refers to the page of the electronic document, not the page number of any internal document.
[6] That lawsuit was filed in the Superior Court of New Bedford, docket 1973CV00856B. (ECF No. 38-9.)
[7] The Petition in its Count 2 alleged a bad-faith refusal on the part of the insurers and seeks punitive damages. The Motion for Partial Summary Judgment did not encompass Count 2.

issued in Massachusetts to Colony, a Massachusetts company. (Plaintiff's Memorandum, ECF No. 38 at 4.) The defendants acknowledge that position in their Memorandum (ECF No. 40 at 19), but do not directly agree or disagree. They do, however, cite Massachusetts case law and Rhode Island law that they claim is "substantially equivalent" (ECF No. 40 at 21; the Court takes that as an implicit acknowledgment that Massachusetts law controls. *Id.* at 24. The Court agrees. The policy was issued in Massachusetts to a Massachusetts company, the plaintiffs were doing business in Massachusetts, the requested coverage to plaintiffs as additional insureds concerned conduct in Massachusetts and, to the extent that it is relevant, both the duty to defend and indemnification apply to a Massachusetts lawsuit. *See Crellin Tech., Inc. v. Equip. Lease Corp.,* 18 F.3d 1, 4 (1st Cir. 1994) (applying Rhode Island law where the contract was made in Rhode Island and where the weight of the interests at stake lay in Rhode Island). Therefore, the Court will apply Massachusetts law.

### III.   GOVERNING LAW

The governing law here is not difficult, nor is it obscure. Black letter principles guide us. Coverage is to be determined by the terms of the policies. *Billings v. Commerce Ins. Co.,* 936 N.E.2d 408, 414 (Mass. 2010). If the terms of the policy are clear and unambiguous, they must be applied to this claim as written. *Lumbermens Mut. Cas. Co. v. Offices Unlimited,* 645 N.E.2d 1165, 1168-69 (Mass. 1995) (term "private passenger automobile" plain and unambiguous to exclude "pickup truck"). If the terms are ambiguous, it is the Court's duty to construe them. *U.S. Liab. Ins. Co.*

4

*v. Benchmark Constr. Servs. Inc.,* 797 F.3d 116, 119 (1st Cir. 2015) (citing *Boazova v. Safety Ins. Co.,* 968 N.E.2d 385, 390 (Mass. 2012)). The interpretation of the policy terms, if interpretation is required, is to favor the insured and ambiguities are to be resolved against the insurer. *Id.* at 119-120. Beyond these maxims, policies that are described as "comprehensive general liability polic[ies]" are intended to give broad coverage. *Vappi & Co. v. Aetna Cas. & Sur. Co.,* 204 N.E.2d 273, 276 (Mass. 1965). Consistent with that pronouncement, exclusions from coverage are to be strictly construed. *Id.* Finally, under Massachusetts law, the duty to defend is a broad one, even broader than the obligation to indemnify. *Doe v. Liberty Mut. Ins. Co.,* 667 N.E.2d 1149, 1151 (Mass. 1996). If the allegations in the operative complaint (the Alfaiate lawsuit) are "reasonably susceptible" of coverage, the insurer must undertake the defense. *Vappi,* 204 N.E.2d at 275.

Setting out the governing principles is the easy part. The rub lies in applying them. With the above tenets of insurance law in mind, the Court turns to the policies themselves.

## IV.   THE POLICIES

Reading insurance policy language is as difficult as reading the United States Tax Code. If policy language is, as laymen often think, designed to confuse, the defendants here, like their colleagues in the industry, have succeeded. There are two policies in this story: the general comprehensive liability policy of Ohio Security and

5

the umbrella policy of Ohio Casualty.[8]  On both policies, Colony Drywall is identified as the "Named Insured."  The provisions at play, with bold type supplied, are the following:

Ohio Security General Liability Policy (ECF No. 38-7, Exh. D-2), policy period 12/27/16 – 12/27/17 (referred to by defts as GL policy).  Portions at 38-6 and 38-7.  Includes General Liability Extension Form (ECF No. 38-7 at 33 of 173).

Liability Coverage Form CG (ECF No. 38-7 at 2 – 18 of 173), provides the insurer will pay sums that "the insured" becomes obligated to pay.

1. Declarations:  Named Insured:  Colony Drywall, Inc.
2. "[T]he words 'you' and 'your' refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy."
3. "The word 'insured' means any person or organization qualifying as such under Section II – Who is An Insured."
4. Part I (p. 11 of 17 of base policy form):  **"No person is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.**  (ECF No. 38-7 at11-12 of 173.)
5. **SECTION II:  WHO IS AN INSURED**
   **If <u>you</u> are designated in the Declarations as …**
   **d.  An organization other than a partnership, joint venture or limited liability company, you are an insured**.
6. CGL Extension Endorsement at p. 3 of 8:  "**G. Additional Insureds – By Contract, Agreement or Permit.**  Paragraph 2 under **Section II Who is An Insured** is amended to include as an insured any person or organization whom you have agreed to act as an additional insured in a written contract, written agreement or permit.  Such person or organization is an additional insured but only with respect to liability for 'bodily injury', 'property damage' or 'personal and advertising injury' caused in whole or in part by:
   a.  **Your acts or omission, or the acts or omissions of those acting on your behalf, in the performance of your on going operations for the additional insured that are the subject of the written contract or written agreement …."**
7. "This policy contains all the agreements between you and us concerning the insurance afforded."  (ECF No. 38-7 at 137 of 173.)

---

[8] The plaintiffs claim coverage under both.  (ECF No. 33, ¶¶ 29(a)-(c).)  The umbrella policy sits on top of, among other things, the Ohio Security General Liability policy.  (ECF No. 38-8, Exh. E-1, at 69 of 73.)

<u>Ohio Casualty Umbrella Insurance Policy</u>

1. COVERAGE – will pay on behalf of "insured" whatever "insured" becomes obligated to pay
2. "'You' and 'your' refer to the Named Insured as defined in Insuring Agreement …" (ECF No. 38-8 at 12 of 73.)

## V.     THE ARGUMENTS

The insurers offer, at length and with detailed references to various provisions of the policies, one overarching argument: that the plaintiffs are not "insureds" and, for that reason, neither indemnification nor the duty to defend apply to them.[9] They contend the plaintiffs are not "named insureds," because they are not named in the

---

[9] The insurers also argue that because there are no acts or conduct of Colony Drywall that are specified in the Alfaiates' lawsuit, that is not an action for which additional insureds, even if Bacon and Agostini were such, would enjoy a right of defense or indemnification. It is correct that the Alfaiates' lawsuit does not set forth a cause of action directly against Colony. But Bacon and Agostini are sued for negligent supervision of Colony's work. By necessary implication, that requires proof of acts or conduct on the part of Colony: acts and conduct of Colony related to their work on the Plymouth High School project. The Alfaiates will have to show that there was some specific conduct on the part of Colony that the plaintiffs should have supervised more carefully. In *Transam. Ins. Group v. Turner Constr. Co.,* 601 N.E.2d 473, 476 (Mass. App. Ct. 1992), Transamerica made the same argument in its attempt to avoid indemnifying Turner Construction for failing carry out its obligation to ensure safety on a job site where Blaesing Granite Co. was a subcontractor. One of Blaesing's employees, working under the level of granite installation, was injured when a piece of granite fell on him. The insurer argued that the injury was caused solely by Turner's failure to supervise, and therefore there was no underlying act of the subcontractor Blaesing for which to invoke the additional insured coverage that Turner had. The appeals court called that argument "breathtakingly unpersuasive," because it would require the court to ignore that Blaesing lost control of the piece of granite: "That the general contractor, because of its over-all supervisory role, would be a target for a claim of negligence as well is precisely the purpose of having the subcontractor's insurance name the general contractor as an additional insured." *Id.* at 476.

7

Declarations and that the plaintiffs are not "additional insureds" for a number of reasons that are discussed individually below.

The difference between a "named insured" and an "additional insured" in this context is substantial. "Named insureds" are those to whom a policy is issued. As the defendants point out, the "named insured" is covered "for sums that [it] becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which the [policy] applies." (ECF No. 38-7 at 2 of 173.) The policy is issued for the period December 27, 2016, through December 27, 2017, and, within that period, any actions against the "named insured" will be defended, and all damages payments will be indemnified, subject to any exclusions in the policy. *Id.* The word "insured" includes, among others, its employees, and volunteers with certain exceptions. *Id.* at 11.

An "additional insured" is an entity that is insured under the policy only with respect to the conduct of the "named insured." An "additional insured" is brought into the coverage embrace of a given policy because of its connection with the named insured and only by virtue of the "named insured" having designated the entity as an "additional insured," for a particular purpose and for a particular endeavor. Within the scope of that purpose and endeavor, an additional insured is covered not for all its acts and conduct in the entire world of its operations, but only for liability it incurs because of the acts and conduct of the "named insured."[10] The naming of an

---

[10] The additional insured entity is covered for its acts and conduct *unrelated* to the particular purpose and endeavor by its own commercial liability policy, as provided in this case to Bacon Construction by Phenix Mutual Fire Ins. Co. (ECF No. 42-1.)

additional insured "does not extend the nature of the substantive coverage originally given by the policy but merely gives to other persons the same protection afforded to the principal insured." *Mass. Tpk. Auth. v. Perini Corp.,* 208 N.E.2d 807, 813 (Mass. 1965). The plaintiffs here seek coverage as "additional insureds" with respect to Colony's acts and conduct related to the Plymouth High School Project.

### A. Named Insured

The insurers prevail in this argument. As the Court reads the policy, its plain language provides that Colony Drywall is the only "named insured." This conclusion is reached with no need to interpret policy language. The Declarations section states clearly "Named Insured: Colony Drywall, Inc." and Colony is the only entity so listed. The body of the policy provides that Colony would be covered for acts and conduct committed during the policy period that result in assessed damages for personal injury and property damages. While there are pages and pages of limitations and exclusions, this coverage extends well beyond the Plymouth High School project to encompass any professional work Colony does.

### B. Additional Insured

The insurers present the argument that the plaintiffs are not "additional insureds" in several distinct sub-parts.

(1)   Claimed Joint Venture Exclusion.

The policy generally provides that any person Colony agreed to add in a written contract is an "additional insured." (ECF No. 38-7 at 35.) The defendants claim, however, that this agreement to cover is modified by a clause that excludes joint

venturers unless they are also "named insureds." They point to the language, "No person is an insured with respect to the conduct of any current or past partnership, *joint venture* or limited liability company that is not shown as a Named Insured in the Declarations." *Id.* at 11-12 of 173. (Emphasis supplied.) The insurers read this language as precluding coverage altogether for joint ventures that are not listed as "named insureds" in the Declarations, and there is no dispute that these plaintiffs are not so listed.

The Court agrees with the plaintiffs that this language does not apply. The policy is to be read "as a whole, in a reasonable and practical way, consistent with its language, background, and purpose." *Mass. Prop. Ins. Underwriting Ass'n. v. Wynn*, 806 N.E.2d 447, 450 (Mass. 2004) (quoting *Gross v. Prudential Ins. Co. of Am.*, 267 N.E.2d 643 (Mass. 1971)). In context, the language most logically excludes coverage to joint venturers *for their own tortious conduct*, the way a named insured is covered. If the language were to be read as the defendants' urge, it would result in every joint venture being a "named insured" and would disallow "additional insured" status even though the policy clearly otherwise recognizes it. The Court finds that the so-called exclusion is therefore inapplicable with respect to the plaintiffs' liability for any conduct of Colony.

Even if the Court were to find the clause ambiguous based on its inconsistency with ¶2 of Section II, "Who is an Insured," the Court would have to interpret it the same way and the plaintiffs would still prevail. *Benchmark Constr. Servs. Inc.*, 797 F.3d at 119-20 (applying Massachusetts law). The argument of the insurers

10

complaining that the Subcontract with Colony was not the kind of "written contract, written agreement or permit" necessary for the plaintiffs to be "additional insureds," implicitly acknowledges that there *can* be joint venturers who are covered without being "named insureds" in the Declaration.

Even supposing an ambiguity, the most logical way to resolve it is to interpret the clause to exclude joint venturers not named in the Declarations from coverage for *all their own acts and conduct* of a negligent or otherwise wrongful nature. In other words, the clause would be interpreted as precluding joint venturers from being covered *in the same way that "named insureds" are,* unless they are specifically named as insureds in the Declarations. It would not, however, exclude them from being covered in the way unique to joint venturers (or partners): for liability they incur as a result of the acts of conduct of the "named insured" in connection with the joint venture project.

The purpose of the joint venture exclusionary clause that the insurers rely on seems to be, as applied in this case, to ensure that Colony, by working with other entities, does not open the insurer up to broad coverage for any entity Colony happens to be working with. Therefore, the policy limits coverage for other companies to those who are either themselves "named insureds" in the Declaration or who are additional insureds for a specific project carried out with Colony, only concerning the work done by Colony, the "named insured," and only with respect to acts or conduct of Colony.

This is a reasonable construction of an arguable inconsistency, and it considers "what an objectively reasonable insured, reading the relevant policy language, would

11

expect to be covered." *Benchmark,* 797 F.3d at 120. This rule of construction "applies with particular force to exclusionary provisions." *Id.* (quoting *Hakim v. Mass. Insurers' Insolvency Fund,* 675 N.E.2d 1161, 1165 (Mass. 1997).[11]

Thus, regardless of whether the exclusionary clause is ambiguous, the Court rejects the defendants' broad argument that it excuses them from defending or indemnifying any joint venturers.

(2) Absence of "written contract, written agreement, or permit"

The insurers claim neither construction company is an additional insured because the Subcontract was not a "written contract, written agreement, or permit" as specified in the CGL Extension Endorsement quoted above. The insurers do not describe how the Subcontract was deficient, but it seems to the Court to be a writing that, once awarded by the plaintiffs and its terms accepted by Colony, constituted a "written contract [or] written agreement." The Subcontract spells out the responsibilities of Colony and was executed by the Director of Purchasing of the Bacon Agostini Joint Venture and by the Treasurer of Colony Drywall. (ECF No. 38-4 at 18.) It constituted a "written contract to create additional insureds." *Suffolk Constr. Co., Inc. v. Illinois Union Ins. Co.,* 951 N.E.2d 944, 950 (Mass. App. Ct. 2011) (holding contractor not an additional insured because there was no writing signed

---

[11] *Fireman's Fund Ins. Co. v. E. W. Burman, Inc.,* 391 A.2d 99, 102 (R.I. 1978), does not compel a different result. First, Massachusetts law, not Rhode Island, applies here. More substantively, while *Burman* applied the same joint venture exclusion to find no coverage, there is no indication in that opinion that the policy contained any language recognizing additional insureds. Thus, because there was no internal inconsistency in the policy, the Rhode Island court could and did decide that the plain language of the exclusionary clause applied.

12

before the injury in which the subcontractor agreed to create an additional insured). The Subcontract evidenced a clear intent to add the joint venture as an additional insured as it plainly required Colony to do so. *Compare A.F. Lusi Constr., Inc. v. Peerless Ins. Co.*, 847 A.2d 254, 258-59 (R.I. 2004) (terms of the Subcontract did not require subcontractor to obtain insurance coverage for general contractor).

The CGL Extension Endorsement at page 3 of 8 provides that an "additional insured" is any person whom Colony has agreed to list as such in a written agreement. And, at page 12 of the written Subcontract, Colony agreed specifically to add "Bacon Agostini Joint Ventures" as an additional insured to all its policies except Workers' Compensation.

The Court therefore rejects the argument that the Subcontract was not a sufficient "written contract or written agreement."

(3) *Who* is a Covered Joint Venturer?

Having found that the policy extends coverage to a joint venturer designated as an additional insured by the BAJV/Colony Subcontract, the remaining question is whether it is the "joint venture" "BAJV" or the individual entities Bacon Construction and Agostini Construction who are covered. The Court finds the individual companies are embraced within the BAJV coverage.

The insurers contend that because the joint venture was designated BAJV, neither Bacon Construction nor Agostini Construction as individual companies are covered. It is the individual construction company entities who are sued in the Alfraiate lawsuit. While it is important that insurers know with precision what

13

entities and activities their policies extend to, the difference between BAJV and the individual entities in this context is one of form, not substance. The policy coverage was extended to the construction entity contracting with Colony on the Plymouth High School project. BAJV is not an independent legal entity having an identity separate from its constituent members. *See Travelers Prop. Cas. Co. of Am. v. Harleysville Ins. Co. of N.Y.*, 67 Misc.3d 1227(A), 2020 WL 3089269, at *3 (N.Y. Sup. Ct. June 5, 2020). The insurers contend that *Travelers* is not of any persuasive value because the policy there did not contain the same joint venture exclusion clause. The reasoning of *Travelers,* however, with respect to the nature of a joint venture, is helpful. *Travelers* held that the joint venture PSVJ was entitled to insurance coverage (which was undisputed there), and both Plaza and Schiavone as individual entities were entitled to that coverage with respect to acts taken "as part of or on behalf of PSJV." *Id.* at *3. A joint venture is not a separate legal entity: it is a creature "that act[s] through its constituent members": each member is bound by the acts of the other and each is jointly and severally liable for those acts within the scope of the joint venture. *Id.*

The insurers' argument that their coverage would extend only to BAVJ if it had been named in the lawsuit is neither logical nor equitable. Setting aside the insurers' argument that no joint venture could be an insured under the policy (which the Court has rejected), there was a clear intention on the part of all the parties to cover any liability that the contractors incurred as a result of Colony's acts on the Plymouth High School policy. That intention was manifested by the signatures on

14

the Subcontract, by Colony's notification to the insurers to add the contractors (ECF No. 38-2 ¶ 17), and by the Certificate that issued (ECF No. 38-10). The scope of that coverage – Colony's acts and conduct on the project that led to liability incurred by the contractors – is the same whether the additional insureds are BAJV or the contractors as individual entities. The insurers presumably increased the premium – or had the opportunity to do so – to embrace an additional insured, and they would receive a windfall if the additional coverage were paid for but not provided. Finally, the choice to sue Bacon Construction and Agostini Construction individually, instead of BAJV, belonged to the Alfaiates and it was a choice neither construction company participated in.

## VI.  EXTENT OF RELIEF

The defendants point out that even if the Court declares the plaintiffs "additional insureds" under the policy, with the correlate duty to defend placed upon the insurers, it is premature to declare a duty to indemnify the plaintiffs whatever the results of the Alfaiate trial. They argue that until the facts of liability are adjudicated in that trial, it is premature for the Court to address the extent of the obligation to indemnify, if any. They cite *Narragansett Bay Ins. Co. v. Kaplan,* 146 F. Supp. 3d 364, 372 (D. Mass. 2015), where the district court, citing Massachusetts law, held that "a declaratory judgment is not yet ripe for consideration regarding the duty to indemnify where, as here, the underlying action has not determined liability or adjudicated factual disputes."

The plaintiffs have not responded to this assertion, and the Court finds it an accurate description of Massachusetts law. "We agree that the judge's order regarding indemnification was premature. … The company is not necessarily bound to satisfy the potential judgment against [the insured], since the facts proved at trial may fall within a policy exclusion, or [the insured] may fail to satisfy certain conditions of the insurance agreement." *Newell-Blais Post No. 443, Veterans of Foreign Wars of U.S., Inc. v. Shelby Mut. Ins. Co.,* 487 N.E.2d 1371, 1374 (Mass. 1986).

The Court therefore confines the declaratory relief it orders to a finding that the plaintiffs are additional insureds under the policies at issue and that the defendants therefore have a duty to defend them in the Alfaiate lawsuit.

## VII.  CONCLUSION

The Court rejects the arguments of the insurers that there is no joint venture coverage of any sort under the Policy, that there is no coverage of an additional insured not named in the Declarations, and that coverage for liability incurred by the joint venture BAJV for acts of Colony Drywall carrying out the Plymouth High School project is not extended to the plaintiffs sued as individual entities. The defendants are responsible for defending both Bacon Construction Co., Inc., and Agostini Construction Co., Inc., for the claims asserted by Daniel and Marlene Alfaiate in the Massachusetts Superior Court action, No. 1973CV00856B (ECF No. 38-9). The plaintiffs may recoup from the defendants any costs they have already incurred in defending themselves in the Massachusetts lawsuit.

Therefore, the Motion for Partial Summary Judgment of the defendants (ECF No. 40) is DENIED, the like Motion of the plaintiffs with respect to Count 1 of the Petition (ECF No. 38) is GRANTED.

The plaintiffs, within the next thirty (30) days, shall submit an Order consistent with the above.

IT IS SO ORDERED:

*Mary S. McElroy*
Mary S. McElroy,
United States District Judge

March 7, 2022